IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal Action No. 3:23cr54 (RCY) |
| | ) | |
| MELVIN MAURICIO VALENCIA GIL, | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION**

This matter is before the Court on Defendant Melvin Mauricio Valencia Gil's ("Mr. Valencia") Motion to Dismiss the Indictment Under 8 U.S.C. § 1326(d). ECF No. 23 ("Motion to Dismiss"). For the reasons stated below, the Court will deny the Motion to Dismiss.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Mr. Valencia is a citizen of El Salvador. Mot., Ex. 1 at 1[1], ECF No. 23-1. In 2017, while living in New York, he was arrested and pled guilty to attempted murder and other crimes, with a total prison sentence of five (5) years. *Id.* at 2–3.

While Mr. Valencia was serving his prison sentence, ICE initiated immigration proceedings by serving him with a Notice to Appear. *See* Mot., Ex. 2, ECF No. 23-2. Mr. Valencia obtained representation from the Prisoners' Legal Services of New York. *See* Mot., Ex. 3, ECF No. 23-3. His law graduate representative (later attorney) entered an appearance and prepared an application for relief. *See id.* Mr. Valencia, through his representative, admitted removability, but sought deferral of removal under the Convention Against Torture ("CAT"). *See id.*

---

[1] All page numbers referring to documents in the record refer to the pagination applied by CM/ECF, and not necessarily to the documents' internal numbering.

While Mr. Valencia was in prison, his father was murdered in El Salvador.  Mot. 2, ECF No. 23 (citing Mot., Ex. 5 at 39, ECF No. 23-5).  Mr. Valencia and his mother testified that they were here in the United States when this occurred, but they were told that the reason his father was murdered was because Mr. Valencia and his brother had refused to cooperate with MS-13.  *Id*. at 2–3 (citing Mot., Ex. 6 at 53–54, ECF No. 23-6).

The Immigration Judge ("IJ") who oversaw the initial step of the removal action denied Mr. Valencia's application for deferral.  Immigration Court Hr'g Tr. at 72–81, ECF No. 27-1.  The IJ found discrepancies between Mr. Valencia's written and oral testimony.  *Id*. at 66, 73.  The IJ also found discrepancies between Mr. Valencia's and his mother's testimony.  *Id.* at 66, 73–74.  The IJ also found that Mr. Valencia had not "satisf[ied] the specific evidentiary requirement" that he "ha[d] to demonstrate with regards to his own particular circumstances" that MS-13 was a government actor for CAT purposes.  *Id*. at 67–68.  Specifically, the IJ found that "MS-13 . . . do[es] not equate to being the government of El Salvador" and that "there[ wa]s no specific evidence here that the government would either be acquiescent or will be willfully blind to the harm that [Mr. Valencia] fears at the hands of MS-13."  *Id*.  The IJ then informed Mr. Valencia of the deadline to appeal the decision to the Board of Immigration Appeals ("BIA"), which was January 8, 2021.  *Id*. at 70.

On December 16, 2020, a week after the hearing, Mr. Valencia spoke with his attorney and expressed a desire to appeal.  Mot., Ex. 8 at 20, ¶ 4, ECF No. 23-8.  On some unspecified date, Mr. Valencia's attorney mailed Mr. Valencia a fee waiver form.  *Id*.  Mr. Valencia signed the form, and the signature is dated December 28, 2020.  *Id*. at 6.  There is no indication when the form was sent back to Mr. Valencia's attorney.  *See id*. at 20–21, ¶¶ 4–5.  The attorney did not file the form by the January 8, 2021 appeal deadline.  *See id*. at 21, ¶ 5.  The attorney stated that he received the

form after it was scanned and emailed to him (due to COVID mail processing) on January 11, 2021.  *Id*.  The attorney stated that any untimeliness was "a full result of [his] inability to send [Mr. Valencia] the necessary paperwork for completion."  *Id*. at 21, ¶ 7.

Mr. Valencia filed an untimely appeal, after the January 8 deadline, and filed a "Motion to Accept Untimely Notice of Appeal" (on the next page called "Motion to Accept Untimely Filing by Certification").  *See id*. at 2, 16–17.  The Motion to Accept Untimely Notice of Appeal was accompanied only by a two-page, seven-paragraph declaration from Mr. Valencia's attorney.  *See id*. at 20–21.

The BIA did not accept Mr. Valencia's appeal, dismissing it as untimely.  Mot., Ex. 9 at 3, ECF No. 23-9.  In relevant part, the BIA's decision read:

> The appeal was . . . due on or before January 8, 2021.  The Notice of Appeal was mailed after the due date and filed with the Board of Immigration Appeals on January 13, 2021.  The appeal is untimely.
>
> In conjunction with the appeal, the respondent requests the Board to accept his untimely filing of the Notice of Appeal because respondent was unable to get the EOIR-26A completed in a timely manner because of his custody status to meet the January 8, 2021 appeal due date.  The facts alleged do not support taking the appeal by certification.  The respondent had adequate time to complete the EOIR-26A form and submit it with his notice of appeal.  The respondent could have submitted the notice of appeal and EOIR-26A if he had started the process sooner.  The respondent had 30 days to do so.  The respondent has not established why he was not able to do so within 30 days.  The respondent could have started the process sooner.  Moreover, the respondent has not set forth with sufficient specificity regarding what actions he took after receiving the EOIR-26A from counsel.  The appeal will be summarily dismissed pursuant to 8 C.F.R. § 1003.1(d)(2)(i)(G).

*Id*.  Beyond the Motion to Accept Untimely Notice of Appeal, Mr. Valencia has not provided any evidence that he filed anything else in the Immigration Court system.  *See* Mot. 3.

Mr. Valencia was then removed to El Salvador.  *Id*.  At some point thereafter, Mr. Valencia reentered the United States.  *See* Indictment, ECF No. 1.  He was arrested in Virginia in September 2023 on multiple felony charges.  Gov't Resp. 1–2, ECF No. 30 ("Resp.").  Upon conviction for

assault and battery and completion of his sentence, Mr. Valencia was charged under 8 U.S.C. § 1326, alleging illegal reentry.  *Id.* at 2; *see* Indictment.

Mr. Valencia filed the instant Motion to Dismiss on May 15, 2024.  ECF No. 24.  After receiving a briefing extension, *see* ECF No. 29, the Government filed its Response brief on June 21, 2024, ECF No. 30.  On July 14, 2024, the Government filed a Notice of Supplemental Authority.  ECF No. 32.  Mr. Valencia filed his "Reply and Request for Hearing"[2] on July 23, 2024, ECF No. 35 ("Reply"), after receiving multiple briefing extensions himself, *see* ECF Nos. 31, 36.

## II.  LEGAL STANDARD

### A.  Motions to Dismiss the Indictment, Generally

Federal Rule of Criminal Procedure 12 allows parties to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits."  Fed. R. Crim. P. 12(b)(1).  Among other things, Rule 12 permits the filing of a motion alleging a "defect in the indictment."  Fed. R. Crim. P. 12(b)(3)(B).

### B.  Framework for Collateral Challenges to Prior Removal Orders Under 8 U.S.C. § 1326(d)

In *United States v. Mendoza-Lopez*, the Supreme Court held that a person charged with illegal reentry under 8 U.S.C. § 1326 has a due process right to collaterally challenge the underlying removal order.  *See Mendoza-Lopez*, 481 U.S. 828, 837–39 (1987).  "Congress

---

[2] Finding that the matters ultimately germane to the Court's disposition of Mr. Valencia's Motion to Dismiss have been fully briefed, and those briefs and accompanying exhibits adequately present the facts and legal contentions, the Court concludes that argument would not aid the decisional process and therefore denies Mr. Valencia's request for a hearing.  E.D. Va. Loc. Crim. R. 7(J).

The Court also acknowledges Mr. Valencia's assertions in his Reply that "the bulk of the hearing" before the IJ "was NOT translated for Mr. Valencia," which he says conflicts with "oral assurances from the government that the hearing was likely interpretated for Mr. Valencia[.]"  Reply 1, ECF No. 35.  However, because Mr. Valencia does not tie this into the substantive arguments on his Motion to Dismiss, *see generally id.* at 1–15, the Court sees no need to address this further in this Opinion.  Mr. Valencia is free to file a motion with the Court if he believes that there is a legal remedy for these alleged misrepresentations from the Government.

responded by codifying the principle of *Mendoza–Lopez* in 8 U.S.C. § 1326(d)." *United States v. Moreno-Tapia*, 848 F.3d 162, 165 (4th Cir. 2017).  Section 1326(d) was "intended to ensure that minimum due process was followed in the original deportation proceeding while preventing wholesale, time consuming attacks on underlying deportation[3] orders." *United States v. Segura-Virgen*, 390 F. Supp. 3d 681, 692 n.12 (E.D. Va. 2019) (quoting 140 Cong. Rec. S5558-01, (daily ed. May 11, 1994), 1994 WL 181390, at S5571), *aff'd*, 799 F. App'x 214 (4th Cir. 2020).

"In order to successfully attack the underlying deportation order" under 8 U.S.C. § 1326(d), the noncitizen defendant "must satisfy three requirements." *United States v. El Shami*, 434 F.3d 659, 663 (4th Cir. 2005).  Section 1326(a) requires

the [noncitizen[4] to] demonstrate[] that--

(1) the [noncitizen] exhausted any administrative remedies that may have been available to seek relief against the order;

(2) the deportation proceedings at which the order was issued improperly deprived the [noncitizen] of the opportunity for judicial review; and

(3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d).  "[E]ach of the statutory requirements of § 1326(d) is mandatory." *United States v. Palomar-Santiago*, 593 U.S. 321, 329 (2021).  "The burden of proof to establish that the elements of Section 1326(d) have been satisfied 'rests with the defendant,'" and "that burden must be met by 'a preponderance of the evidence.'" *Segura-Virgen*, 390 F. Supp. 3d at 691 (quoting *United States v. Galcia*, 2016 WL 4054926, *2 (E.D. Va. July 26, 2016)).  If the noncitizen

---

[3] "The terms 'deportation' and 'removal' are interchangeable for purposes of § 1326." *Moreno-Tapia*, 848 F.3d at 165 n.1.

[4] The Court uses the term "noncitizen" as an equivalent for the statutory term "alien" (as that term is used both in statutes and in judicial opinions).  *See Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020).  And for consistency, the Court also uses "noncitizen" in place of "petitioner" appearing in judicial opinions.

defendant "satisfies all three requirements, the illegal reentry charge must be dismissed as a matter of law." *El Shami*, 434 F.3d at 663.

### III. DISCUSSION

The question before the Court is whether Mr. Valencia has met his burden to show that he has satisfied all three requirements of 8 U.S.C. § 1326(d).  The Court concludes that he has not, because Mr. Valencia has not "demonstrated" that he "exhausted any administrative remedies that may have been available to seek relief against the order" issued by the IJ in his case.  8 U.S.C. § 1326(d)(1).[5]  For that reason, the Court must deny Mr. Valencia's Motion to Dismiss.

"[E]xhaustion of administrative remedies . . . means using all steps that the agency holds out, and doing so properly."  *Etienne v. Lynch*, 813 F.3d 135, 141 (4th Cir. 2015)  (alteration and omission in original) (emphases omitted) (quoting *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)).  So, "[w]hen a [noncitizen] has an opportunity to raise a claim in administrative proceedings but does not do so, he fails to exhaust his administrative remedies as to that claim."  *Ramirez v. Sessions*, 887 F.3d 693, 700 (4th Cir. 2018), *as amended* (June 7, 2018) (quoting *Etienne*, 813 F.3d at 138).

"Ordinarily, a [noncitizen] exhausts his administrative remedies by raising an argument challenging the IJ's decision in an appeal to the BIA."  *Cabrera v. Barr*, 930 F.3d 627, 631 (4th Cir. 2019).  As a result, "arguments that a [noncitizen] did not raise in the BIA proceedings have not been exhausted," and "[o]nly after the BIA has rendered a decision on an argument or claim is that argument or claim said to have been exhausted."  *Id.*

Ultimately, "[t]he exact measures required to exhaust administrative remedies in the § 1326(d)(1) context depend on the specific circumstances of removal," but as the above reflects,

---

[5] Because the Court concludes that Mr. Valencia has failed to satisfy subsection (d)(1)'s exhaustion requirement, the Court need not consider whether Mr. Valencia has satisfied subsections (d)(2) or (d)(3).

6

a noncitizen "is generally required to move to reopen or rescind their deportation hearing or to appeal the deportation order" properly on the merits to the BIA. *United States v. Castro-Aleman*, 2023 WL 4937304, at *3 (E.D. Va. Aug. 2, 2023) (citing *United States v. Munoz-Giron*, 943 F. Supp. 2d 613, 621 (E.D. Va. 2013)). The Fourth Circuit has discussed four key "principles related to the exhaustion requirement" in the immigration context, which are helpful in determining whether a noncitizen has properly exhausted their administrative remedies in a particular case:[6]

> First, the exhaustion requirement "serves the twin purposes of protecting administrative agency authority and promoting judicial efficiency." Both objectives are served when . . . the BIA has exercised its authority by issuing a conclusive ruling on a particular issue in the [noncitizen]'s agency proceedings and the Court knows the agency's final adjudication of the issue in the [noncitizen]'s case. . . .

> Second, the exhaustion requirement is consistently described in terms of substance rather than timing. The significant inquiry is *that* the BIA has definitively ruled on the [noncitizen]'s argument in adjudicating his case, not *when* it has done so. . . .

> Third, the exhaustion requirement is satisfied when the BIA has definitively spoken on a particular issue in the [noncitizen]'s case one time. [Noncitizens] need not file a motion to reconsider the same argument the BIA has already rejected in order to exhaust their remedies. . . .

> Lastly, . . . [g]enerally speaking, a [noncitizen] must raise his arguments before the BIA even when he is almost assuredly not going to prevail, such as when the BIA has rejected the argument in a different case or binding precedent forecloses it from adopting his position.

---

[6] In this discussion, the Court relies on Fourth Circuit precedent dealing with the administrative exhaustion requirements of 8 U.S.C. § 1252(d)(1), although the exhaustion requirements implicated by the present case draw from 8 U.S.C. § 1326(d)(1). This is because the Fourth Circuit's § 1252(d)(1) "holding[s] appl[y] equally to the administrative exhaustion requirement of Section 1326(d)(1)." *Segura-Virgen*, 390 F. Supp. 3d at 695, *aff'd*, 799 F. App'x 214 (4th Cir. 2020). The Supreme Court's recent decision in *Santos-Zacaria v. Garland*, 598 U.S. 411 (2023), does not upset this interplay. In that case, the Supreme Court held that because § 1252(d)(1) requires that a noncitizen "exhaus[t] all administrative remedies available to the [noncitizen] *as of right*," *id.* at 424 (emphasis added) (quoting 8 U.S.C. § 1252(d)(1)), the exhaustion requirement therein does not extend to pursuing forms of *discretionary* relief, such as motions to reopen with the BIA, *id.* at 425. In contrast, § 1326(d)(1) more broadly requires exhaustion of "*any* administrative remedies that *may* have been available to seek relief," which necessarily includes pursuing discretionary relief. 8 U.S.C. § 1326(d)(1) (emphases added). Thus, while *Santos-Zacaria* narrowed the exhaustion requirement for § 1252(d)(1) based on the text of the statute, and to that extent might have abrogated some Fourth Circuit caselaw interpreting § 1252(d)(1), such precedent remains good law for cases interpreting the broader exhaustion requirement of § 1326(d)(1).

*Cabrera*, 930 F.3d at 633–34 (quoting *Kurfees v. I.N.S.*, 275 F.3d 332, 336 (4th Cir. 2001)).

With these principles in mind, the Court turns to the parties' arguments here.  In short, Mr. Valencia argues that he should be deemed to have exhausted his administrative remedies because the option of putting the substantive issue of his "request for relief under the Convention Against Torture" before the BIA was "unavailable" due to ineffective assistance of counsel, after his attorney failed to file a timely notice of appeal from the decision of the IJ.  *See* Mot. 1, ECF No. 23; *see id.* at 4–5.  The Government adversely asserts that substantive review of the CAT issue *was* available, had Mr. Valencia properly put the issue of ineffective assistance before the BIA.  *See* Gov't's Resp. 3–4, ECF No. 30.  Specifically, the Government argues that, pursuant to the leading BIA case *Matter of Lozada*, 19 I. & N. Dec. 637 (BIA 1988), Mr. Valencia should have filed a motion to reopen his removal proceedings with the BIA based on his attorney's alleged ineffectiveness; had he been successful on that front, it would have revived his CAT claim for substantive BIA review.  *See id.* at 4.  Per the Government, such a motion to reopen was an administrative remedy available[7] to Mr. Valencia, and his failure to pursue it constitutes "fail[ure] to exhaust his administrative remedies as required . . . under § 1326."  *See id.*  In reply, Mr. Valencia argues that pursuing an ineffective assistance claim further before the BIA was similarly not "available" to him, or such an ineffective assistance claim was otherwise properly exhausted, because the issue of ineffective assistance was essentially already presented to the BIA in Mr.

---

[7] The Government discusses Mr. Valencia's arguments through the lens of whether Mr. Valencia is "excused" from exhausting his administrative remedies.  *See id.* at 3–7.  The Court agrees with Mr. Valencia that, "[s]ince [*United States v.*] *Palomar-Santiago*, [593 U.S. 321 (2021),] the question" is technically "not whether [he] was *excused* from exhausting administrative remedies . . . but instead whether the remedy was 'available' to seek relief."  Mot. 4 (quoting 8 U.S.C. § 1326(d)(1)); *see also* Reply 1–2 (same).  Functionally, though, the Government's argument that Mr. Valencia's failure to exhaust his administrative remedies under § 1326(d)(1) should not be "excused" is really just an argument that Mr. Valencia failed to exhaust all his "*available*" remedies and thus did not satisfy § 1326(d)(1).  *Cf. United States v. Patricio-Cazares*, 2023 WL 2335350, at *2 (E.D. Wash. Mar. 2, 2023) ("Whether § 1326(d)(1) . . . [is] 'excused' or 'deemed satisfied,' the result is the same.").  For that reason, the Court construes the Government's arguments through the "availability" lens.

Valencia's attorney's declaration and representation that it was his (the attorney's) fault for filing the appeal late. *See* Reply 2–4, ECF No. 35. He therefore argues that the exhaustion requirement of § 1326(d)(1) is satisfied. *See id.*

These arguments give rise to three issues the Court must decide: (1) whether the initial ineffective assistance of counsel rendered further administrative relief *per se* unavailable, or whether such an ineffective assistance claim must also have been asserted to the BIA before it can be raised here; (2) if there is an administrative exhaustion requirement for the ineffective assistance claim, was administrative relief "available" to Mr. Valencia on that claim; and (3) if administrative relief was available, could (and did) Mr. Valencia satisfy the incumbent exhaustion requirement in some manner other than filing a motion to reopen with the BIA. For the reasons set forth below, the results of this three-part inquiry dictate that the Court deny Mr. Valencia's Motion to Dismiss.

## A. Ineffective Assistance of Counsel Exhaustion Requirement

The Court can answer the first of these questions in short order. The Fourth Circuit has held that where a noncitizen believes "that he was unable to exhaust [his] claims on account of ineffective assistance of counsel," the noncitizen "must file a motion to reopen with the B[IA] pursuant to *Matter of Lozada*," or else the Fourth Circuit will not review the underlying ineffective assistance of counsel claim on appeal and will conclude that the noncitizen "failed to properly exhaust [his] claims before the B[IA]." *Degu v. Holder*, 583 F. App'x 214, 214, 215 n.* (4th Cir. 2014) (per curiam); *see Zuniga v. Garland*, No. 20-2015, 2021 WL 5492806, at *4 (4th Cir. Nov. 23, 2021) ("Zuniga argues that she was provided ineffective assistance of counsel before the IJ and BIA. But we cannot consider this argument—or excuse any failure to exhaust based on ineffective assistance in BIA proceedings—because this claim, too, should have been presented to the BIA in the first instance. As Zuniga concedes, the proper vehicle for an ineffective assistance

claim is a motion to reopen with the BIA." (citing, *inter alia*, *Lozada*, 19 I. & N. Dec. at 639–40)). The reasoning in these decisions—though they are unpublished, and therefore not binding—is compelling, and in adopting the same framework, the Court finds that Mr. Valencia's arguments to the contrary are foreclosed.  Tracking *Degu* and *Zuniga*, Mr. Valencia "should have . . . presented [his ineffective assistance claim] to the BIA in the first instance," through "the proper vehicle" of a motion to reopen.  *Zuniga*, 2021 WL 5492806, at *4.  Having thus answered the first question in the affirmative, the Court can only find for Mr. Valencia if he shows either that the required motion to reopen was not "available" under the circumstances, or that he somehow otherwise properly brought his ineffective assistance claim to the BIA's attention, in a manner that satisfies § 1326(d)(1)'s exhaustion requirement.[8]

## B.  Filing a Motion to Reopen Was an Available Option

Mr. Valencia has not convinced the Court that a motion to reopen based on ineffective assistance of counsel was not "available" to him.  Mr. Valencia's only argument in this vein is that a motion to reopen was not "available" because, under the governing regulation, motions to reopen to the BIA "can only be based on 'evidence [that] is material and was not available and could not have been discovered or presented at the former hearing.'"  Reply 2 (quoting 8 C.F.R. § 1003.2(c)(1)).  Mr. Valencia relies on this limitation to argue that, because his attorney had already submitted a declaration and representation that it was his (the attorney's) fault the appeal was filed late, there was no new evidence upon which he could base a motion to reopen—"[i]t was all already there in the record."  *Id.* at 2–3.

---

[8] Though not binding, the Court notes that the First Circuit has dealt with this exact issue in the § 1326(d)(1) context and has likewise held that in circumstances such as these, a noncitizen who fails to file a motion to reopen with the BIA under *Lozada*, or otherwise fails to assert an ineffective assistance claim in the immigration system in the first instance, fails to exhaust administrative remedies under § 1326(d)(1).  *See United States v. Castillo-Martinez*, 16 F.4th 906, 917 (1st Cir. 2021).

That argument fails on the face of the regulation's text.  Specifically, the extended text of 8 C.F.R. § 1003.2(c)(1) says that "[a] motion to reopen proceedings *shall not be granted* unless it appears to the B[IA] that evidence sought to be offered is material and was not available and could not have been discovered or presented at the former hearing."[9]  8 C.F.R. § 1003.2(c)(1) (emphasis added).  That regulation does not prevent a noncitizen armed with ostensibly old evidence from *filing* a motion to reopen with the BIA.  Simply because a noncitizen's motion with the BIA is not likely to be granted does not mean that that administrative avenue is not "available" to a noncitizen—just the opposite, in fact:  "Generally speaking, a [noncitizen] must raise his arguments before the BIA *even when he is almost assuredly not going to prevail*," to exhaust administrative remedies.  *Cabrera*, 930 F.3d at 633–34 (emphasis added).  So, even if the Court were to accept *dubitante* Mr. Valencia's argument that all possible evidence for a motion to reopen "was all already there in the record," *see* Reply 3; *but cf.* discussion *infra* Part III.C.2, the Court could not say that he has met his burden to show that a motion to reopen with the BIA under *Lozada* was not "available" to him under § 1326(d)(1).

## C.  Mr. Valencia Did Not Exhaust his Ineffective Assistance of Counsel Claim

Given Mr. Valencia's failure to show that a motion to reopen filed with the BIA based on ineffective assistance of counsel—the path through which he could ultimately "seek relief against the [IJ's underlying] order"—was not "available" to him, the Court determines that Mr. Valencia was required to file such a motion with, or at a minimum otherwise assert an ineffective assistance

---

[9] Mr. Valencia does not address whether his lawyer's out-of-time paper filing with the BIA in fact qualifies as "the former hearing" referenced in § 1003.2(c)(1).  *See* Reply 2–4.  There is no binding authority available on the question, but the Sixth Circuit's reading of that phrase suggests that it would not so qualify.  *See Abdulahad v. Garland*, 99 F.4th 275, 285 (6th Cir. 2024) ("When considering whether evidence was not previously available, we define 'at the former hearing' as at the time of the merits hearing, as opposed to evidence submitted on appeal or with a motion to reopen . . . ." (quoting 8 C.F.R. § 1003.2(c)(1))).  That may be another vulnerability in this argument.  But, in an effort to give Mr. Valencia the benefit of doubt, the Court assumes, without deciding, that Mr. Valencia's lawyer's submission to the BIA counts as a "former hearing" within the meaning of § 1003.2(c)(1).

claim to, the BIA to satisfy 8 U.S.C. § 1326(d)(1)'s exhaustion requirement in this case. It is undisputed that Mr. Valencia did not file a motion to reopen with the BIA; all he filed was the late appeal and the Motion to Accept Untimely Notice of Appeal. Mr. Valencia argues that the Court should accept the Motion to Accept Untimely Notice of Appeal as properly presenting his claim of ineffective assistance to the BIA, but the Court is not convinced by any of the arguments Mr. Valencia presents, for the reasons set out below.

1.   The Motion to Accept Untimely Notice of Appeal Did Not Properly Raise and Exhaust an Ineffective Assistance Claim with the BIA

The main reason Mr. Valencia has not convinced the Court that the Motion to Accept Untimely Notice of Appeal satisfies the ineffective assistance exhaustion requirement is that the Motion to Accept Untimely Notice of Appeal simply did not properly bring to the BIA's attention an ineffective assistance of counsel *claim*. The only thing that could possibly go to the ineffective assistance question is his attorney's representation in a declaration attached to the motion "that the untimeliness of [the] Notice to Appeal is a full result of [the attorney's] inability to send [Mr. Valencia] the necessary paperwork for completion." Mot., Ex. 8 at 21, ¶ 7. But neither the Motion to Accept Untimely Notice of Appeal nor the attorney's declaration make an explicit reference to "ineffective assistance." *Id*. at 16–17, 20–21. Nor is there in either document so much as a cite to *Lozada*, the BIA's flagship ineffective assistance case. *Id*.

This conspicuous silence on the issue explains why the BIA's summary denial of the Motion to Accept Untimely Notice of Appeal did not at all pass on Mr. Valencia's attorney's effectiveness or ineffectiveness. The BIA based its denial of the Motion to Accept Untimely Notice of Appeal solely on *Mr. Valencia's* failures, concluding that "*[t]he respondent* had adequate time to complete the EOIR-26A form and submit it with his notice of appeal;" that "*[t]he respondent* had 30 days to do so" and had "not established why he was not able to do so in 30

days;" and that "*the respondent* ha[d] not set forth with sufficient specificity regarding what actions *he* took after receiving the EOIR-26A from counsel."  Mot., Ex. 9 at 3, ECF No. 23-9 (emphases added); *see also supra* Part I (observing that there is no indication in the record when Mr. Valencia sent the form back to his attorney).  The BIA in no way addressed the propriety of how Mr. Valencia's lawyer handled mailing Mr. Valencia the relevant documents and whether that amounted to ineffective assistance of counsel—the basis of Mr. Valencia's instant ineffective assistance argument.  *Cf.* Mot. 5.  And under basic exhaustion principles espoused by the Fourth Circuit, the BIA's failure to do so confirms that Mr. Valencia's Motion to Accept Untimely Notice of Appeal did not properly assert an ineffective assistance of counsel claim and therefore did not properly exhaust any such claim with the BIA.  *See Cabrera*, 930 F.3d at 631 ("[A]rguments that a [noncitizen] did not raise in the BIA proceedings have not been exhausted . . . .  Only after the BIA has rendered a decision on an argument or claim is that argument or claim said to have been exhausted.").[10]  In these circumstances, the proper way for Mr. Valencia to raise and exhaust his ineffective assistance claim was a motion to reopen to the BIA, post-BIA-denial of the Motion to Accept Untimely Notice of Appeal.  *See also id*. at 633 ("[T]he exhaustion requirement is satisfied when the BIA has definitively spoken on a particular issue in the [noncitizen]'s case one time. [Noncitizens] need not file a motion to reconsider the same argument the BIA has already rejected in order to exhaust their remedies."); *Zuniga*, 2021 WL 5492806, at *4 ("[T]he proper vehicle for an ineffective assistance claim is a motion to reopen with the BIA.").  Mr. Valencia has not convinced the Court that the Motion to Accept Untimely Notice of Appeal constitutes exhaustion

---

[10] The Fourth Circuit has recognized "another path to exhaustion" where a noncitizen does not properly bring a claim or issue to the BIA's attention:  where the BIA has issued a definitive ruling on an issue *sua sponte*.  *See Portillo Flores v. Garland*, 3 F.4th 615, 633–34 (4th Cir. 2021) (en banc).  That rule has no applicability here, given the nature of the BIA's summary denial of the Motion to Accept Late Filing.

of his claim of ineffective assistance of counsel with the BIA, such that he can now collaterally attack the IJ's removal order without having properly appealed that order to the BIA on the merits.

    2.  The Motion to Accept Untimely Notice of Appeal Did Not Satisfy *Lozada*

Mr. Valencia alternatively contends that he did not have to file a separate motion to reopen with the BIA pursuant to *Matter of Lozada*, because, he says, his Motion to Accept Untimely Notice of Appeal "*did* comply with *Matter of Lozada*."  Reply 3.  The Court does not agree.

"In *Matter of Lozada*," the BIA "held that claims alleging ineffective assistance of counsel require" three things:

    (1) that the motion to reopen be supported by an affidavit of the allegedly aggrieved respondent setting forth in detail the agreement that was entered into with counsel with respect to the actions to be taken and what representations counsel did or did not make to the respondent in this regard;

    (2) that counsel whose integrity or competence is being impugned be informed of the allegations leveled against him or her and be given an opportunity to respond and;

    (3) that the motion reflect whether a complaint has been filed with appropriate disciplinary authorities with respect to any violation of counsel's ethical or legal responsibilities, and if not, why not.

*Matter of Rivera-Claros*, 21 I. & N. Dec. 599, 602–03 (BIA 1996) (citing *Lozada*, 19 I. & N. Dec. 637).[11]

---

[11] By way of background, "*Lozada* is intended to ensure both that an adequate factual basis exists in the record for an ineffectiveness complaint and that the complaint is a legitimate and substantial one."  *Castillo-Perez v. INS*, 212 F.3d 518, 526 (9th Cir. 2000).  The BIA has explained that meeting the three *Lozada* requirements "is necessary if [the BIA is] to have a basis for assessing the substantial number of claims of ineffective assistance of counsel that come before [it]," because "[w]here essential information is lacking, it is impossible to evaluate the substance of such claim."  *Lozada*, 19 I. & N. Dec. at 639.  The *Lozada* requirements also serve to provide the BIA with enough information to inform its decision without the need of a hearing, since the BIA "prefer[s] to make final determinations of ineffective assistance of counsel claims on the documentary submissions alone, where possible."  *Rivera-Claros*, 21 I. & N. Dec. at 604.  With respect to the legitimacy and substance of an ineffective assistance of counsel claim, each of the three requirements serves important purposes.  For example, the third requirement, "the requirement of filing a complaint, or adequately explaining why such a complaint has not been filed, protects against possible collusion between counsel and the [noncitizen] client."  *Id.* at 605.  Also, if a complaint is indeed filed with the attorney's licensing body, that "increases [the BIA's] confidence in the validity of the particular claim."  *Id.*

The Court has no difficulty concluding that the Motion to Accept Untimely Notice of Appeal filed on Mr. Valencia's behalf to the BIA does not satisfy the first or the third *Lozada* requirements.  The first *Lozada* prong requires "that the motion to reopen be supported by an affidavit *of the allegedly aggrieved respondent* setting forth in detail" what the respondent and their attorney agreed (or did not agree) the attorney would (or would not) do.  *Rivera-Claros*, 21 I. & N. Dec. at 603 (emphasis added).  Mr. Valencia, the respondent in his removal proceedings, did not file any affidavit including his factual representations on this issue.  The third *Lozada* prong requires "that the motion reflect whether a complaint has been filed with appropriate disciplinary authorities with respect to any violation of counsel's ethical or legal responsibilities, and if not, why not."  *Id.*  There is nothing of the sort in the Motion to Accept Untimely Notice of Appeal.

In sum, taking the argument on its face, Mr. Valencia has not convinced the Court that the Motion to Accept Untimely Filing satisfies *Lozada* and thus serves as the functional equivalent of a motion to reopen with the BIA under *Lozada*, for exhaustion purposes.

### 3.  Mr. Valencia's Remaining Arguments Are Without Merit

Lastly, Mr. Valencia raises some related arguments that appear to suggest that his Motion to Accept Untimely Notice of Appeal did not actually have to satisfy *Matter of Lozada* for him to have properly exhausted his administrative remedies in this case, due to the specific nature of his ineffective assistance allegations.  These arguments fail to persuade.

In a footnote in his Reply, Mr. Valencia refers to "a circuit split on whether a failure to comply with *Lozada* qualifies as a failure to exhaust administrative remedies," citing the Ninth Circuit's decision in *Hernandez-Mendoza v. Gonzales*, 537 F.3d 976 (9th Cir. 2007).  *See* Reply 3 n.1.  Then, in a similar vein, Mr. Valencia says that his is an example "of [a] 'clear and obvious case of ineffective assistance' that courts have held do not require collateral development," pointing the Court to the Ninth Circuit's decision in *Ray v. Gonzalez*, 439 F.3d 582 (9th Cir 2006).

15

*See* Reply 4. That "clear and obvious" reference appears in the context of *Ray* reaffirming a principle in Ninth Circuit caselaw that the Ninth Circuit will still "address ineffective assistance of counsel claims even when [a noncitizen] fails to comply strictly with *Lozada*." *Ray*, 439 F.3d at 588 (collecting Ninth Circuit cases). In the culmination of the cited out-of-circuit cases, the Ninth Circuit held that a noncitizen satisfies § 1326(d)(1) where their attorney's ineffectiveness causes the failure to exhaust a proper merits appeal to the BIA, and it does not necessarily matter whether the noncitizen complies with *Lozada* because "[t]he *Lozada* requirements need not be applied where the ineffective assistance of counsel is 'clear and obvious' from the record." *United States v. Lopez-Chavez*, 757 F.3d 1033, 1044 (9th Cir. 2014) (quoting *Hernandez-Mendoza*, 537 F.3d at 978) (assuming *Lozada* applies in § 1326(d)(1) exhaustion context).

The Court construes Mr. Valencia's arguments as a threefold request: first, to apply the Ninth Circuit's "clear and obvious" ineffective assistance approach; second, to find that this standard is met on the present facts; and third, to therefore find that Mr. Valencia has satisfied § 1326(d)(1) despite not properly presenting his CAT or ineffective assistance claims to the BIA. Critically, this request founders at the first stage: the Court declines to adopt the Ninth Circuit's "clear and obvious" standard where the Fourth Circuit has not done so.[12] *See also Xing Yang Yang v. Holder*, 770 F.3d 294, 299 n.6 (4th Cir. 2014), *as amended* (Nov. 5, 2014) (recognizing that "[t]he record readily reveal[ed] issues concerning whether the lawyer provided effective assistance to Yang" but not considering such issues "[b]ecause Yang did not pursue an effective assistance claim to the BIA" and thus did not exhaust his administrative remedies); *Flores v. Gonzales*, 231 F. App'x 283, 284 (4th Cir. 2007) (per curiam) ("The remaining claims set forth in Flores'[s] brief

---

[12] Other federal courts of appeals have explicitly confronted requests to follow the Ninth Circuit's "clear and obvious" approach and/or the Ninth Circuit's *Lopez-Chavez* precedent and have declined do so. *See Castillo-Martinez*, 16 F.4th at 915; *Guzman-Rivadeneira v. Lynch*, 822 F.3d 978, 983 (7th Cir. 2016); *Hernandez-Ortez v. Holder*, 741 F.3d 644, 648 (5th Cir. 2014).

16

were not raised before the [BIA].  As such, they have not been administratively exhausted . . . .
With regard to Flores'[s] ineffective assistance of counsel claim, we note that she has also failed
to comply with the requirements of *Matter of Lozada*." (citations omitted)).[13]

The Court acknowledges that outside of the exhaustion context, the Fourth Circuit has not
required strict compliance with *Lozada*.  On substantive review of the BIA's denial of a motion to
reopen, the Fourth Circuit has held that it "will reach the merits of an ineffective assistance of
counsel claim where the [noncitizen] *substantially* complies with the *Lozada* requirements, such
that the BIA could have ascertained that the claim was not frivolous and otherwise asserted to
delay deportation." *Barry v. Gonzalez*, 445 F.3d 741, 746 (4th Cir. 2006) (emphasis added).[14]  If
the noncitizen is not in "substantial compliance" with *Lozada*, however, the Fourth Circuit will
find that the BIA did not abuse its discretion in denying a motion to reopen based on ineffective
assistance and will affirm.  *See id*. at 746–47.

*Barry* did not set a hard and fast rule for "substantial compliance."  The *Barry* court held
that the noncitizen who failed to satisfy any of the three *Lozada* requirements in that case was not
in substantial compliance, but the court did not commit to a bright line rule that a noncitizen who

---

[13] Not only do these out-of-circuit cases not bind here, they are also on shaky ground back home.  Following
the Supreme Court's decision in *United States v. Palomar-Santiago*, 593 U.S. 321 (2021), the Ninth Circuit itself
has expressly questioned the continued vitality of this line of cases as it relates to § 1326(d)(1)'s exhaustion requirement.
As the Ninth Circuit has framed it, the thrust of these precedents is "that a showing of ineffective assistance of counsel
can justify a failure to exhaust" under § 1326(d)(1).  *United States v. Castellanos-Avalos*, 22 F.4th 1142, 1146 (9th
Cir. 2022) (citing *Lopez-Chavez*, 757 F.3d at 1044).  But the Supreme Court's "holding that 'a court may not excuse
a failure to exhaust' administrative remedies pursuant to § 1326(d)(1)" in *Palomar-Santiago* "has called at least some
aspects of" the Ninth Circuit's § 1326(d)(1) "framework into question." *Castellanos-Avalos*, 22 F.4th at 1146 (quoting
*Palomar-Santiago*, 593 U.S. at 326).  Other Ninth Circuit opinions have likewise "express[ed] doubt" whether the
Ninth Circuit's "§ 1326(d) doctrines" survive *Palomar-Santiago*.  *Castellanos-Avalos*, 22 F.4th at 1146 (collecting
Ninth Circuit opinions).  As the principle espoused in *Lopez-Chavez* is a reopened question even in the Ninth Circuit,
the Court even more strongly declines any invitation to wade into these uncertain waters.

[14] If one tracks the Ninth Circuit's "clear and obvious" line of cases back all the way, it starts as tethered to
the question of whether "there has been substantial compliance with the rule" in *Lozada*.  *See Castillo-Perez*, 212 F.3d
at 526.  There is no indication in any binding Fourth Circuit case that "clear and obvious" ineffective assistance would
count as "substantial compliance" with *Lozada*, as the Fourth Circuit has understood that concept.

meets none of the three requirements will never be in substantial compliance. *See id.* Since *Barry*, there is no binding Fourth Circuit case applying its standard. But, in a nonbinding opinion applying *Barry*, the Fourth Circuit affirmed a BIA denial of a motion to reopen based on the noncitizen's "fail[ure] to substantially comply with the third requirement" of *Lozada*—i.e., based on a noncitizen's failure to meet just *one* of the three requirements. *See Dubon Hernandez v. Garland*, No. 23-1769, 2024 WL 2815067, at *1 (4th Cir. June 3, 2024) (per curiam).[15]

Even if the Court were to assume that the Fourth Circuit would apply *Barry*'s lower "substantial compliance" standard in the context of determining exhaustion under § 1326(d)(1), the Court would not find that standard to be met in this case. Using *Dubon Hernandez* as a data point, the Court would find that the Motion to Accept Untimely Notice of Appeal's failure to satisfy two of the three *Lozada* requirements evinces a failure to substantially comply with *Lozada*. As such, the Court finds no basis to absolve Mr. Valencia of his obligation to squarely raise the issue of ineffective assistance of counsel with the BIA, form of motion aside.

## IV. CONCLUSION

The IJ denied Mr. Valencia's CAT claim and ordered Mr. Valencia removed. To be able to collaterally attack that order here, Mr. Valencia was required, among other things, to "exhaust[] any administrative remedies that may have been available to seek relief against the order." 8 U.S.C. § 1326(d)(1). This edict required Mr. Valencia to directly appeal the IJ's order and squarely raise his CAT claim to the BIA. He failed to timely do so, and the BIA so dismissed his appeal. Now, Mr. Valencia says that late appeal was due to ineffective assistance of counsel. But Mr. Valencia has failed to demonstrate that this alleged ineffectiveness left him without any "available"

---

[15] The Seventh Circuit, citing *Barry*, found that a noncitizen who "did not fulfill two of the three *Lozada* requirements . . . ha[d] not shown . . . substantial compliance." *Patel v. Gonzales*, 496 F.3d 829, 831 (7th Cir. 2007) (citing *Barry*, 445 F.3d at 746).

"administrative remedies . . . to seek relief against the [IJ's] order." *See id*. Mr. Valencia could have filed a motion to reopen his proceedings with the BIA based on ineffective assistance of counsel pursuant to *Matter of Lozada*; if successful, he would then have been able to raise his CAT claim with the BIA. Because Mr. Valencia failed to file a motion to reopen with the BIA under *Lozada* and did not otherwise properly assert an ineffective assistance of counsel claim with the BIA in the first instance, the Court cannot say that he has met his burden to show that he has satisfied § 1326(d)(1).

For these reasons, Mr. Valencia has failed to demonstrate that he has met all three requirements set forth in 8 U.S.C. § 1326(d) for him to collaterally attack his removal order. As such, Mr. Valencia's Motion to Dismiss the Indictment will be denied.

An appropriate Order shall issue.

/s/ *RCY*

_____

Roderick C. Young
United States District Judge

Date: August 5, 2024
Richmond, Virginia